IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>        v.<br><br>RM INVESTMENTS USA LLC, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:24-CV-1903-TWT |

**OPINION AND ORDER**

This is a declaratory judgment action. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 24] and the Plaintiff's Motion for Default Judgment [Doc. 25]. For the reasons set forth below, the Plaintiff's Motions for Summary Judgment [Doc. 24] and for Default Judgment [Doc. 25] are DENIED.

I.  **Background**[1]

This case arises from a purported breach of an insurance contract.

**A. The Insurance Contract**

Plaintiff Auto-Owners Insurance Company issued Businessowners Insurance Policy number 52-800-116-00 (the "Insurance Contract") to

---

[1] The operative facts on the Motion for Summary Judgment are taken from the Plaintiff's Statement of Undisputed Material Facts and the responses thereto. The Court will deem the Plaintiff's factual assertions, where supported by evidentiary citations, admitted unless the Defendants make a proper objection under Local Rule 56.1(B).

Defendants Grady Truck Stop LLC ("Grady Truck Stop") and RM Investments USA LLC ("RM Investments") (collectively, the "Store Defendants") for the relevant period. (*See* Pl.'s Statement of Undisputed Material Facts ¶ 13 [Doc. 24-2]). The Insurance Contract obligates the Plaintiff to insure the Store Defendants for any sums they are legally obligated to pay arising out of personal injury claims, subject to certain terms and conditions. (*See id.* ¶ 15).

One such condition is the Insurance Contract's notice provision. The Insurance Contract imposes an obligation on the Store Defendants to "promptly" notify the Plaintiff of any occurrences that may result in a claim under the policy. (*See id.*). The Insurance Contract clarifies in a separate provision that a violation of the notice provision can only arise when "any officer, director, partner, risk, manager, or insurance manager" of the Store Defendants have knowledge of an occurrence that may give rise to a claim under the Insurance Policy and fails to notify the Plaintiff "as soon as practicable." (*See id.* ¶ 16). Any employee of the Store Defendants who does not qualify as one of the enumerated positions will not violate the Insurance Contract from their failure to provide the Plaintiff notice. (*See id.*).

B. The Underlying Incident

On July 2, 2021, Defendant Jennifer Melton allegedly slipped and fell at a gas station convenience store located in Thomasville, Georgia (the "Premises"). (*See id.* ¶ 2). Nawanna Welch and Buffie Vicks, employees of the Store Defendants, were present at the time of the incident but did not see

Defendant Melton fall. (*See* Def. Melton's Statement of Additional Facts ¶ 1 [Doc. 26-1]). After the alleged fall, Welch and Vicks heard of the incident and approached Defendant Melton. (*See id.*). Upon doing so, Welch and Vicks saw her sitting up on the floor. (*See id.*). After Melton requested that emergency services be called, Welch and Vicks called 911 and paramedics arrived at the scene. (*See id.* ¶ 2; Pl.'s Response to Def. Melton's Statement of Additional Facts ¶ 2 [Doc. 29]). Once the paramedics left the scene, Defendant Melton remained, wanting to speak to the owner of the Premises. (*See* Def. Melton's Statement of Additional Facts ¶¶ 4-5; Pl.'s Response to Def. Melton's Statement of Additional Facts ¶ 4). After some time, Defendant Melton eventually gave up and left. (*See id.*). All events within this paragraph will be collectively referred to as the "Incident".

Aziz Damani is the owner of Grady Truck Stop and the President of RM Investments. (Pl.'s Statement of Undisputed Material Facts ¶¶ 4-5). The facts surrounding whether Damani received notice from his employees are disputed by the parties. What is not disputed is that Damani provided notice to the Plaintiff on November 30, 2021, soon after Damani received a letter notifying him of Defendant Melton's claims against the Store Defendants. (*See* Pl.'s Statement of Undisputed Material Facts ¶¶ 10-11; *id.* ¶ 11).

### C. Defendant Melton's State Court Suit

Two years later, Defendant Melton filed an action in the State Court of Fulton County against numerous defendants, including the Store Defendants

3

(the "State Court Litigation"). (*See* Pl.'s Statement of Undisputed Material Facts ¶ 1; Compl. ¶ 2 [Doc. 1]). Defendant Melton's civil lawsuit alleges that she suffered injuries arising out of the Incident and states claims for premises liability, vicarious, liability, and negligent training and supervision. (*See* Pl.'s Statement of Undisputed Material Facts ¶2). The Plaintiff currently defends the Store Defendants within the State Court Litigation pursuant to a complete reservation of rights notwithstanding defenses to coverage. (*See* Compl. ¶ 4). The State Court Litigation is still ongoing as of the date of this Order.

### D. Procedural Posture

As the State Court Litigation continues, the Plaintiff filed their action in this Court against the Defendants. (*See* Compl. ¶ 12). The Complaint contains a singular declaratory judgment count, requesting that the Court hold that the Store Defendants were in breach of the Insurance Contract by providing late notice to the Plaintiff of Defendant Melton's claim, thereby relieving the Plaintiff of their obligations under the Insurance Contract. (*See id.* ¶¶ 23-26). Defendant Melton timely filed her answer to the Complaint. However, the Store Defendants failed to answer, resulting in the clerk entering default judgment against the Store Defendants within this action on June 10, 2024.

The Plaintiff and Defendant Melton engaged in discovery. Upon the conclusion of discovery, the Plaintiff filed its Motion for Summary Judgment

against Defendant Melton and its Motion for Default Judgment against the Store Defendants. The Court addresses these Motions here.

## II.  Legal Standards

### A. Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### B. Default Judgment

A defendant who fails to appear, plead, or otherwise defend in a suit may be subject to an entry of default under Rule 55(a) and ultimately default judgment under Rule 55(b). Fed. R. Civ. P. 55(a)–(b). "A defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citation modified). Once the clerk has entered a party's default, any other

party may then move for default judgment. *Carrier v. Jordaan*, 746 F. Supp. 2d 1341, 1345–46 (S.D. Ga. 2010). Default judgment is appropriate "when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). This standard is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.*

### III. Discussion

#### A. Motion for Summary Judgment

Within their briefings, the Plaintiff argues that there is no genuine issue of material fact regarding notice and that, as a matter of law, the Plaintiff may deny coverage under the Insurance Contract for failure to provide timely notice. (*See* Br. in Supp. of Pl.'s Mot. for Summ. J., at 6-12 [Doc. 24-1]). Defendant Melton disagrees, arguing that there is a genuine issue of material fact pertaining to notice because of the existence of conflicting testimony pertaining to whether Damani had adequate knowledge of the Incident. (*See* Def. Melton's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 4-10 [Doc. 26]). The Court concludes that a disputed issue of material fact exists to preclude summary judgment.

1. Timely Notice

Under Georgia law,[2] insurance contracts are interpreted by "ordinary rules of contract construction." *Boardman Petrol., Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327 (1998). "Any ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage . . . is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible." *Id.* at 328 (citation modified). "Terms in an insurance policy are given their ordinary and common meaning, unless otherwise defined in the contract." *Id.* Furthermore, "[t]he contract is to be considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others." *Id.* "Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent." *Id.*

When addressing whether notice is timely under the terms of an insurance contract, Georgia courts acknowledge that such a question is usually within a jury's purview. *Patterson v. United Servs. Auto. Ass'n*, 375 Ga. App.

---

[2] Where a contract contains no choice of law provision, Georgia applies the rule of *lex loci contractus*. *Lima Delta Co. v. Glob. Aerospace, Inc.*, 325 Ga. App. 76, 83 (2013). As applied to insurance contracts, Georgia applies the law of the place where the contract was made or delivered. *Id.* at 83-84. Here, the Insurance Contract does not contain a choice of law provision, but it does identify a Georgia address for delivery of the Insurance Contract. (*See* Compl., Ex. B ("Insurance Contract"), at 1 [Doc. 1-2]). Therefore, Georgia law will apply to the issue of timely notice.

821, 824 (2025) (citation omitted). However, a court may determine whether notice is unreasonable as a matter of law when there is unexcused, significant delay. *Id.* (citation omitted). No brightline rule exists when an insurance contract's notice provision lacks any specific time frame. *Id.* (citation omitted). Therefore, courts are required to conduct a factual inquiry into the circumstances to determine whether an insured unreasonably delayed its notice. "Georgia courts have held that a delay of as little as three months" can be untimely. *State Farm Fire and Cas. Co. v. LeBlanc*, 494 F. App'x 17, 23 (11th Cir. 2012); *see, e.g., Diggs v. S. Ins. Co.*, 172 Ga. App. 37, 37 (1984) (holding three-month notice to be unreasonable when policy required immediate notice); *Advoc. Networks v. Hartford Fire Ins. Co.*, 296 Ga. App. 338, 339-40 (2009) (holding four-month notice to be unreasonable when policy required notice "as soon as practicable" and plaintiff had no justifiable excuse).

Here, the parties agree that the individual responsible for providing notice to the Plaintiff is Damani under the terms of the Insurance Contract and not the employees of the Store Defendants. Additionally, the parties do not dispute that the Insurance Contract states that Damani has an obligation to notify the Plaintiff "promptly" or "as soon as practicable" when an "occurrence" happens that may result in a claim. (Pl.'s Statement of Undisputed Material Facts ¶¶ 15-16). Furthermore, neither party presents evidence of any justifiable excuse that would allow for Damani's delay in providing the Plaintiff notice. Therefore, the timing of Damani's knowledge of the facts surrounding

8

the Incident is material to resolving whether his subsequent notice to the Plaintiff was untimely.

### 2. Damani's Knowledge of the Incident

Because the Plaintiff's Motion for Summary Judgment relies on a determination of the timing of when Damani knew about the Incident, Defendant Melton's focuses her argument on showing a material dispute of fact exists. First, Defendant Melton argues that the evidence is disputed over whether Damani had notice prior to receiving the letter notifying him of Defendant Melton's claims against him. (*See* Def. Melton's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 5-6). Second, Defendant Melton argues that there is insufficient evidence to show that Damani had knowledge of any non-trivial injury to Defendant Melton. (*See id.* at 6-10).

When evaluating a motion for summary judgment, a district court should not grant the motion "[i]f a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. Of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir. 2007). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" when a district court rules on a motion for summary judgment. *Id.* (quoting *Anderson*, 477 U.S. at 255 (quotation marks omitted)). A genuine issue of material facts exists when "the nonmoving party

9

has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

The Plaintiff argues that the evidence clearly shows that Damani had knowledge of the facts within a week of the Incident. (*See* Br. in Supp. of Pl.'s Mot. for Summ. J., at 11). In support of this proposition, the Plaintiff points to a recorded statement between Damani and the Plaintiff shortly after the Plaintiff was given notice where Damani admitted that he was aware of the Incident within a week. (*See id.*; Pl.'s Statement of Undisputed Material Facts, Ex. A [Doc. 24-3] ("Recorded Conversation with Damani") at 2:19-3:8). The Plaintiff also points to testimony given by Wahab, stating that he spoke with Damani about the Incident less than an hour after its occurrence. (*See* Pl.'s Statement of Undisputed Material Facts, Ex. D [Doc. 24-6] ("Wahab Dep.") at 30:6-32:1). However, Defendant Melton directs the Court's attention to Damani's later statements made during his deposition, which point to Damani only having knowledge of the Incident five months later upon notice by the owner of the Premises that Defendant Melton planned to file suit. (*See* Def. Melton's Br. in Opp'n to Pl.'s Mot. for Summ. J., at 5-6; Pl.'s Statement of Undisputed Material Facts, Ex. F [Doc. 24-8] ("Damani Dep.") at 19:17-20:12).

To address this factual inconsistency within the evidence, the Plaintiff makes several arguments. First, the Plaintiff characterizes Damani's subsequent testimony as speculation. (*See* Br. in Supp. of Pl.'s Mot. for Summ.

J., at 11). Specifically, the Plaintiff argues that Damani's statement that he would have told the Plaintiff about the Incident had he known as alleged amounts to speculation that should not be considered on a motion for summary judgment. (*See id.*). Indeed, courts within this state and District have found that mere speculation alone is not sufficient evidence allowing a party to demonstrate a factual dispute on a motion for summary judgment. *See Rutledge v. Kroger Co.*, 2017 WL 6997148, at *2 (N.D. Ga. Oct. 16, 2017) (collecting cases). However, the Plaintiff's reliance on this doctrine is misplaced because the alleged speculation, even if taken as true, is not a material fact. It does not matter whether Damani would or would not have told the Plaintiff if he had known sooner because he expressly states that he only found out about the facts of the Incident five months later. (*See* Damani Dep. at 19:17-20:12). Accordingly, this argument fails.

The Plaintiff then argues that the Court should disregard Damani's testimony due to his inconsistent prior recorded statement under the sham affidavit rule. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 11-12). Under this rule, an affidavit may be disregarded in a motion for summary judgment "if it is inconsistent with earlier deposition testimony in a manner that cannot be explained." *Benjamin v. Experian Info. Sols., Inc.*, 561 F. Supp. 3d 1330, 1350 (N.D. Ga. 2021) (citing *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984)). However, "an affidavit may only be disregarded as a sham 'when a party has given clear answers to unambiguous questions which

11

negate the existence of any genuine issue of material fact.'" *Bryant v. U.S. Steel Corp.*, 428 F. App'x 895, 896-97 (11th Cir. 2011) (quoting *Van T. Junkins & Assocs.*, 736 F.2d at 657). "[C]ourts must carefully apply the sham affidavit rule because 'every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence.'" *Benjamin*, 561 F. Supp. 3d at 1350 (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)). Importantly, the Eleventh Circuit has only discussed applying this doctrine when "an affidavit or declaration allegedly contradicted sworn deposition testimony." *Kilgore v. Trussville Dev., LLC*, 646 F. App'x 765, 771 (11th Cir. 2016).

Under these guiding principles, the Plaintiff's attempt to construe Damani's subsequent deposition testimony as a sham affidavit is unpersuasive for three, independent, reasons. First, outside of characterizing Damani's testimony as a sham affidavit, the Plaintiff has provided no case law that extends the sham affidavit rule to deposition testimony. Indeed, the name of the rule itself implies that affidavits are the target of the doctrine, not subsequent deposition testimony initiated by the Plaintiff.

Second, assuming that the Plaintiff is correct and that the sham affidavit doctrine could apply to Damani's deposition testimony, the Court does not see any "clear" testimony given by Damani that thoroughly negates the subsequent deposition testimony. When an employee of the Plaintiff asks Damani when he first became aware of the Incident, Damani expresses

uncertainty and remarks, "[o]h man. It's been a while, you know?" (*See* Recorded Conversation with Damani [Doc. 24-3] at 2:19-2:23). He follows this up by saying that he is speaking to the employee while driving and that he is uncertain about the exact date he became aware. (*See id.* at 2:25-3:1). It was only after the employee's suggestion of a certain date that Damani stated that he "probably heard it a week after that, or 4 or 5 days after that. (*See id.* at 3:2-3:8). Such unsworn testimony taken in circumstances where Damani was preoccupied with driving his vehicle does not amount to "clear answers to unambiguous questions" that may form the basis of invalidating subsequent testimony under the sham affidavit rule. *See Bryant*, 428 F. App'x at 896-97 (quoting *Van T. Junkins & Assocs.*, 736 F.2d at 657).

Third, the Eleventh Circuit has looked unfavorably on applying the sham affidavit rule when there is "a later affidavit and earlier, apparently unsworn, interrogatory responses." *See Kilgore*, 646 F. App'x at 771. While the Plaintiff is correct that the Eleventh Circuit provided no brightline rule prohibiting the application of the sham affidavit rule in similar circumstances in *Kilgore*, the Court is mindful of the doctrine's narrow application and the role of the jury in deciding issues amounting to credibility. Accordingly, the Court is not inclined to expand the sham affidavit rule to include scenarios where earlier, unsworn testimony contradicts later deposition or affidavit testimony.

13

As a last gasp effort, the Plaintiff argues that, even if the Court considers Damani's deposition testimony, there is no dispute over any material fact because Damani's first recorded conversation was more recent to the Incident than Damani's deposition testimony. (*See* Br. in Supp. of Pl.'s Mot. for Summ. J., at 12). The Plaintiff advances this argument without providing any authority that shows a court granting summary judgment on this ground, instead citing a mid-twentieth century decision from this District granting a plaintiffs' discovery motion. (*See id.* (quoting *Lee v. Head*, 48 F.R.D. 303, 304-05 (N.D. Ga. 1969)). The argument is wholly unpersuasive because it would require the Court to invade the province of the jury. The Plaintiff's argument asks the Court to make credibility and weight-of-the-evidence determinations that are improper at this stage. Construing all evidence in favor of Defendant Melton, the Court finds no basis to reject Damani's deposition testimony on this basis.[3]

Accordingly, the Court finds a dispute of material fact exists over when Damani received notice of the Incident, as required by the Insurance Contract.

---

[3] Even if the Court somehow were to agree with the Plaintiff, the earlier recorded conversation with Damani is not one occurring immediately after the events of the Incident. Although the transcript fails to note the date of the conversation, it is clear that the dialogue occurs after the Plaintiff received a letter detailing Defendant Melton's claims against Damani. (*See* Recorded Conversation with Damani at 2:22-3:5). The Incident is not fresh in Damani's mind because he expresses doubt as to the details throughout the conversation. (*See id.* at 2:22-3:12). Thus, while the recorded conversation occurred years before the deposition, it is not so clearly recent as to weigh in favor of granting summary judgment if the Plaintiff's argument had merit.

Because such a dispute exists, the Court will not grant summary judgment to the Plaintiff.

### B. Motion for Default Judgment

In their declaratory judgment action, the Plaintiff pleads a single count requesting the Court rule that the Store Defendants' late notice bars coverage under the Insurance Contract. While Defendant Melton timely responded to the Complaint and has remained actively engaged in litigation against the Plaintiff, the Store Defendants have failed to do so, and a clerk's entry of default has been entered against them.

A court may "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. Proc. 54(b). In determining whether a "just reason for delay" exists, the Eleventh Circuit advises courts to consider "judicial administrative interests," including "the historic federal policy against piecemeal appeals" and "the equities involved." *Lloyd Noland Found. v. Tenet Health Care Corp.*, 483 F.3d 773, 778 (11th Cir. 2007) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)).

One such situation where there may be a "just reason for delay" is where default judgment as to less-than-all parties may create inconsistent judgments between all parties. In a footnote, the Eleventh Circuit discussed this issue in *Drill S., Inc. v. Int'l Fid. Ins. Co.*, 234 F.3d 1232 (11th Cir. 2000). There, the court acknowledged that under a prior holding by the United States Supreme

15

Court, default judgment should not be entered as to some defendants prior to a decision on the merits as to the remaining defendants if the defendants are similarly situated in a manner where it would create a risk of inconsistent adjudications. *Id.* at 1237 n.8 (quoting *Frow v. De La Vega*, 82 U.S. 552, 554 (1872)). Following this guidance, courts within this Circuit decline to grant default judgment when doing so creates a risk of inconsistent judgments. *See, e.g., Zamani v. Sachar*, 2015 WL 14111032, at *2-3 (N.D. Ga. Nov. 13, 2015); *AMCO Ins. Co. v. Nottingham*, 2025 WL 3567172, at *2-3 (N.D. Ga. Nov. 17, 2025); *Applya Corp. v. TBG Tech. Co., LLC*, 2024 WL 5294278, at *2-4 (S.D. Fla. Dec. 20, 2024).

Here, the Plaintiff requests default judgment against the Store Defendants while Defendant Melton remains litigating this case. Even if the Court were to assume that the Plaintiff's Complaint states a claim to grant default judgment, a final judgment against the Store Defendants would be inconsistent with Defendant Melton's defense. This is because, if default judgment is granted as to the Store Defendants, then the Plaintiff would prevail in its effort to deny coverage to the Store Defendants, *but only as to the Store Defendants*. If Defendant Melton were to prevail on the issue of coverage at trial, then the Plaintiff would be confronted with entirely inconsistent judgments. To prevent this possible result, the Court will deny the Plaintiff's Motion for Default Judgment at this time.

16

### IV. Conclusion

For the foregoing reasons, the Plaintiff's Motions for Summary Judgment [Doc. 24] and Default Judgment [Doc. 25] are DENIED. The parties are DIRECTED to file a consolidated pre-trial order within 30 days of the date of this Order pursuant to Local Rule 16.4(A), N.D.Ga.

SO ORDERED, this  19th  day of February, 2026.

THOMAS W. THRASH, JR.<br>
United States District Judge